UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELMOTEC STATOMAT, INC. and
ELMOTEC STATOMAT
VERTRIEBS GmbH,

    Plaintiffs,

v.

                                Case No. 07-13884

VISTEON CORPORATION,

    Defendant, and                       Hon. John Corbett O'Meara

REMY, INC.,

    Intervenor-Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART VISTEON'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant Visteon Corporation's motion for summary judgment, filed November 17, 2008. Plaintiffs Elmotec Statomat, Inc., and Elmotec Statomat Vertriebs GmbH ("Elmotec") filed a response on December 19, 2009. Defendant submitted a reply brief on January 12, 2009. The court heard oral argument on February 12, 2009, and took the matter under advisement. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**BACKGROUND FACTS**

Elmotec filed this action on September 14, 2007, alleging various breach of contract and patent claims against Visteon. Basically, Elmotec alleges that Visteon took confidential

inventions made by Elmotec and patented them as its own, without properly naming Elmotec employees as co-inventors. Elmotec further alleges that Visteon terminated its relationship with Elmotec, refused to pay cancellation charges due under the parties' agreement, and then licensed Elmotec's inventions to Remy, Inc.

In 2000, Visteon began developing a new alternator. The portion of the alternator pertinent to this suit is called the stator, which holds wound electrical wire. A stator consists of a hollow metal cylinder with slots around the inner surface. Wires are placed in the interior slots and wrapped around the inside of the stator, preferably maximizing the "slot fill" of, and therefore the power generated by, the alternator.

Visteon wanted to make the new alternator more efficient and powerful than previous versions; to that end, Visteon conceived of ways to wind the wire around the stator differently and more efficiently. Visteon engineer Kirk Neet was primarily responsible for the development of the stator; and he conceived of many different wire winding patterns. In one design, different wires fall over each other in a "cascaded" or "nested" fashion. (See illustrations in Visteon's Brief at 2-3.) Visteon claims that Neet documented this pattern as early as November 21, 2000. Visteon also used an "interlaced" pattern, similar to weaving or braiding.

Visteon also claims it developed a basic process for transferring the electrical wires on to the stator. This process included developing a wire pack, placing the wire pack on an arbor, and expanding the wires outwardly from the arbor into the stator slots.

After Visteon had developed prototype stators and a basic manufacturing process, Visteon met with two potential suppliers, Elmotec and Bartell. Visteon charged these suppliers with developing a process to manufacture the stators on a large scale. Visteon ultimately

contracted with Elmotec. Elmotec made certain suggestions for a specific process for manufacturing Visteon's stator and filed for its own patent.

Visteon and Elmotec worked together to develop the stator manufacturing process beginning in August 2002, exchanging ideas in a series of meetings. Visteon issued several purchase orders to Elmotec to design tools/machines to manufacture the stator, the last of which was dated November 5, 2004. The purchase orders are governed by Visteon's terms and conditions, which provide for the payment of certain charges if the purchase orders are cancelled. On January 5, 2005, Visteon ordered Elmotec to stop work because the project was on hold. Thereafter, Visteon contracted with Remy, Inc., to manufacture the stator. Visteon cancelled the Elmotec contract on February 16, 2006. On March 15, 2006, Elmotec submitted cancellation charges to Visteon in the amount of $393,131.74. Visteon has not paid these requested cancellation charges.

## **LAW AND ANALYSIS**

Visteon seeks summary judgment on all of Elmotec's claims: Count I, breach of contract (for failure to pay cancellation charges); Count II, Correction of Named Inventor (on patents); Count III, breach of confidentiality agreement; Count IV, breach of (oral) agreement regarding intellectual property rights; Count V, promissory estoppel (regarding intellectual property rights); Count VI, quantum meruit; and Count VII, account stated (with regard to cancellation charges).

### **I.   Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When

reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.     Correction of Named Inventor (Count II)

Elmotec seeks to have its employee(s) named as co-inventors on several of Visteon's patents. For purposes of this case, these patents fall into two categories: (1) those involving a "cascaded" winding pattern for the stator wires; and (2) those involving the method to manufacture the stators using a "linear magazine."

A person who alleges that he is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to correct inventorship in a district court under 35 U.S.C. § 256. "Conception is 'the touchstone of inventorship.'" Board of Educ. v. American Bioscience, Inc., 333 F.3d 1330, 1337 (Fed. Cir. 2003) (citation omitted). A person is a joint inventor "only if he contributes to the conception of the claimed invention." Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1359 (Fed. Cir. 2004); Id. at 1342. "Conception" is the formation in the mind of the inventor of a definite and permanent idea of the operative invention, including every feature of the claim. Sewall v. Walters, 21 F.3d 411, 415 (Fed. Cir. 1994).

"In a section 256 proceeding, '[t]he inventors as named in an issued patent are presumed to be correct.' The general rule is that a party alleging misjoinder or non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence and must provide evidence to corroborate the alleged joint inventor's conception." Eli Lilly, 376 F.3d at

1358 (citations omitted).[1]

### A. "Cascaded" Pattern Patents

Visteon asserts that it conceived of the cascaded winding pattern in late 2000. Kirk Neet created the design and recorded it on a CAD file on November 21, 2000. On October 8, 2002, Neet submitted paperwork to Visteon's patent attorneys to file a patent application on the cascaded design.

Elmotec alleges that one of its employees, Keith Witwer, created the cascaded design on August 13, 2002. In an email to Jack Hardison at Visteon dated October 2, 2002, Witwer stated that he had created new winding pattern, but did not explain the pattern in detail. See Elmotec Ex. 31. Elmotec alleges that Witwer showed a prototype of the pattern to Neet and Bramson on October 9, 2002.

Assuming everything Elmotec alleges is true, it has not provided clear and convincing evidence that Witwer should be named co-inventor of the cascaded winding pattern. There is no evidence that Witwer communicated the details of his pattern to anyone at Visteon before he showed Neet and Bramson a prototype on October 9, 2002 – one day after Neet had already submitted paperwork to obtain an patent on the cascaded pattern. Although Elmotec claims that Neet's design was a mere "illustration" of the pattern described in Witwer's October 2 email, there are two problems with this argument. First, the email does not describe a cascaded pattern in detail at all. See Elmotec Ex. 31. Second, Witwer's email did not go to Neet, but to Jack

---

[1] Although claim construction is generally the first step in determining co-inventor status, see Trovan Ltd v. Sokymat SA, Irori, 299 F.3d 1292, 1305 (Fed. Cir. 2002), the meaning and scope of the claims does not appear to be at issue here. Rather, Visteon's arguments turn on its claim that it invented the cascading winding pattern first and that Elmotec's alleged contribution to the method patents – the "linear magazine" – is undisputedly prior art.

Hardison. Id. There is no evidence Hardison forwarded or gave the email to Neet.

Accordingly, the court will grant summary judgment in favor of Visteon on this claim.

### B.  Manufacturing Process Patents

Visteon claims that it developed the basic process for manufacturing the stator in early 2002 and disclosed that process to Elmotec. See Visteon Ex. 1 (Declaration of Kirk Neet). The process included (1) forming a wire pack outside of the stator, (2) placing a wire pack on a circular arbor; and (3) manually expanding the wire outwardly into the stator. Elmotec disputes this. According to Elmotec, Visteon only disclosed a manual process for winding the wires in the stator, not an automatic manufacturing process. Elmotec alleges that its employee, Sadik Sadiku, conceived of a manufacturing process using a "linear magazine" to hold the wires. Sadiku conveyed this alleged invention to Visteon in drawings faxed on August 20, 2002. See also Sadiku Dep., Elmotec Ex. 2 at 62 ("I invent the linear magazine . . . .").

Elmotec challenges two Visteon method patents based on the alleged linear magazine invention. The first, U.S. Patent No. 7,143,501, does not mention a linear magazine. It is not clear, then, how Elmotec contributed to this invention.

The second patent, U.S. Patent No. 7, 386,931, mentions a linear magazine in dependent claim 9. Visteon claims that the linear magazine is not significant enough to this patent to warrant a change in inventorship. See Eli Lilly, 376 F.3d at 1359 (contribution must be "not insignificant in quality when that contribution is measured against the dimension of the full invention"). According to Visteon, the '931 patent is patentable without the linear magazine.

Moreover, Visteon argues, the linear magazine is not a new invention at all, but constitutes "prior art." See Eli Lilly, 376 F.3d at 1359. See Visteon Ex. 29 (1980 U.K. Patent

Application). Elmotec's expert admitted that "Sadiku did not invent using a linear magazine to create an electrical winding pattern." Visteon Ex. 26 at 36-37. See also Ex. 30 (notice of allowabilty, noting the prior art teaches "a longitudinal receiver for transferring wave windings into slots of a rotatable cylindrical member. . .").

In light of these arguments, the court finds that Elmotec has not presented clear and convincing evidence that Sadiku invented the manufacturing process using a linear magazine. The court will grant summary judgment on this claim in favor of Visteon.

### III.  Breach of Confidentiality Agreement (Count III)

Elmotec alleges that Visteon disclosed its confidential information regarding its inventions to Remy and by including the information in patent applications. Visteon alleges that Elmotec's breach of confidentiality agreement claim must be dismissed for three reasons: (1) the confidentiality agreement was superseded by Visteon's terms and conditions in its purchase orders; (2) Elmotec filed a patent application in 2003, thereby making its "confidential" information public in 2004; and (3) Elmotec has never specified its damages, an essential element of a breach of contract claim.

Elmotec argues that the confidentiality agreement was not superseded by the purchase orders, because it was modified after the date of the last purchase order, thus suggesting that the parties intended it to remain in effect. Elmotec does not respond in any way to Visteon's other two arguments. It is not clear to the court how Elmotec can reasonably claim the confidentiality agreement was breached if it made its own confidential information public. Further, Elmotec has not enumerated its damages. See New Freedom Mortgage v. Globe Mortgage Corp., 281 Mich. App. 63, 761 N.W.2d 832, 837 (2008) ("Damages are an element of a breach of contract

action."). As a result, the court will grant summary judgment in favor of Visteon on this claim.

### IV. Oral Contract regarding Intellectual Property and Promissory Estoppel (Counts IV and V)

In its complaint, Elmotec alleges that there was an oral agreement between the parties regarding certain intellectual property rights. Visteon asserts that the oral agreement is precluded by the subsequent terms and conditions contained in its purchase orders. Elmotec does not address this argument or these claims at all in its brief, thereby waiving them. The court will grant summary judgment on these counts in favor of Visteon.

### V. Quantum Meruit (Count VI)

Elmotec is asserting a quantum meruit claim as an alternative to its breach of contract claim involving the cancellation charges (Count I). However, "[a]n implied contract cannot be enforced where the parties have made an express contract covering the subject matter." Scholz v. Montgomery Ward & Co., 437 Mich. 83, 93, 468 N.W.2d 845 (1991). There appears to be no dispute that the parties have an agreement covering the subject matter of the cancellation charges. Accordingly, the court will dismiss Elmotec's quantum meruit claim.

### VI. Breach of Contract (Count I)

Elmotec asserts that it billed Visteon approximately $400,000 in cancellation charges under the parties' agreement, which Visteon never paid. Visteon states that Elmotec has never provided backup documentation regarding these charges, which are time and material costs. Elmotec responds that, although Visteon never requested documentation prior to this suit, it did provide such documentation in this case.

There appears to be no dispute that the contract provides for the payment of cancellation charges. On this record, the amount of the charges and sufficiency of Elmotec's evidence are a

matter for the jury.  Visteon has not sustained its burden of demonstrating that no genuine issue of material fact exists as to this claim.  Accordingly, the court will deny Visteon's motion as to Elmotec's breach of contract claim.

## VII.  Account Stated (Count VII)

Elmotec's account stated claim is another version of its breach of contract claim.  Both sides argue that the other has not complied with the requirements of Michigan's account stated statute.  See M.C.L. 600.2145.  Elmotec asserts that it submitted an affidavit of account with its complaint and that Visteon did not submit a counter-affidavit.  Visteon contends that Elmotec submitted an unsworn statement, not an affidavit, which was not dated within 10 days of filing the complaint, as required by statute.  (The statement is not dated at all.)  Further, Visteon contends that Elmotec did not "annex [to the affidavit] a copy of said account" as required by the statute.

Elmotec has not complied with the requirements of M.C.L. 600.2145.  Accordingly, it has not presented a prima facie case of Visteon's indebtedness under the statute.  The court will dismiss Elmotec's account stated claim.

## ORDER

IT IS HEREBY ORDERED that Visteon's motion for summary judgment is DENIED IN PART as to Elmotec's breach of contract claim (Count I).

IT IS FURTHER ORDERED that Visteon's motion for summary judgment is GRANTED IN PART with respect to Elmotec's remaining claims, consistent with this opinion and order.

s/John Corbett O'Meara  
United States District Judge

Date:  April 17, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 17, 2009, by electronic and/or ordinary mail.

s/William Barkholz  
Case Manager